**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**WESLEY BLACKARD**                                                                    **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO. 2:11-CV-00006-NBB-SAA**

**CITY OF SOUTHAVEN,**
**MAYOR GREG DAVIS** *in his official capacity as Mayor of Southaven,*
**SOUTHAVEN POLICE DEPARTMENT,**
**THOMAS LONG** *in his official capacity as Chief of Police,* and
**BRANNON RUSHING** *individually and in his official capacity as*
*a Southaven Police Officer*                                             **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the defendants' motion for summary judgment and

motion to strike plaintiff's response in opposition to summary judgment as untimely. Having

considered said motions and applicable statutory and case law, the court is ready to rule.

Background

This 42 U.S.C. § 1983 case arises from the October 4, 2009, arrest of the plaintiff,

Wesley Blackard. At approximately 1:25 a.m., Blackard was arrested at his home in Southaven,

Mississippi, for suspicion of leaving the scene of an accident with property damage and driving

under the influence. Blackard states that these charges were later dismissed. He alleges injuries

resulting from the defendants' unnecessary and excessive use of force while he was being held

during the booking process at the Southaven Police Department after his arrest. Video

surveillance maintained by the police department memorializes the incident of alleged excessive

force, although the tape contains no audio and an elevated intake desk blocks Blackard from

view during the portion of the incident where he is on the ground after being taken down by Southaven police officers.

The surveillance tape shows a patrol car arriving at the bay-area of the station at 1:46 a.m., and an officer directing a hand-cuffed Blackard to exit the back of the vehicle at 1:48 a.m. The officer removes Blackard's handcuffs and directs Blackard through a series of field sobriety tests. Blackard is compliant during these tests. At 1:54 a.m., Blackard is taken inside the station and placed in a holding cell. He is not handcuffed while in the holding cell. Blackard sits inactive in the holding cell until 2:12 a.m., when an officer allows him to exit the cell and hands him what appears to be a cell phone. Blackard walks out of the view of the camera and cannot be seen again on the tape until 2:30 a.m., when he returns to the booking area. He exits the booking area temporarily through a door and is returned to the holding cell at 2:33 a.m. Blackard is again seen sitting in a chair in the holding cell un-handcuffed. He raises both hands in the air at 2:34:23 a.m. At 2:34:28 a.m., Officer Rushing rises from his seat at the intake desk, goes into the holding cell, and with the help of another officer, takes Blackard down face-first onto the floor. At 2:34:41, a third officer assists Rushing and the other officer with Blackard. A fourth officer watches the incident. At 2:34:54 a.m., the two officers assisting Officer Rushing walk away as Officer Rushing fires a taser into Blackard while Blackard is on the floor. In the next few minutes, Rushing and another officer use paper towels to clean up around Blackard. Officer Rushing testified in his deposition that this occurred because Blackard was "bleeding heavily" and "there was blood all over [Blackard]." At 2:38:33 a.m., Officer Rushing picks Blackard up off of the floor and returns him to the holding cell. Blackard then sits down in the chair in the holding cell, and the tape concludes at 2:40 a.m.

According to Blackard, he was reaching for lip moisturizer in his pocket, when Officer Rushing asked him what he was reaching for and sarcastically stated, "What are you reaching for? A gun?" Blackard alleges that in response to this sarcastic question, he sarcastically replied, "Yeah, man, I've got a gun in my pocket." Blackard states that when he made this sarcastic statement regarding having a gun, officers ran into his holding cell, took him to the ground, and Officer Rushing tased him.

Blackard maintains that the officers knew he was being sarcastic when he stated that he had a gun because the officers had already searched him "several times" before he made the statement. He testified that throughout the arrest process, Officer Rushing's comments towards him were loud, aggressive, and "in his face." He argues that the force used against him was excessive because at no time, did the officers actually believe he posed a threat to them and further, he was tased despite not resisting the officers' efforts to take him down and handcuff him. At his deposition, Blackard testified:

> I remember laying on the ground and – with my face down and my hands out to my side, and all I remember hearing him yelling, "Stop resisting." And I was like, "I'm not."

The plaintiff admits that he apologized to Officer Rushing later at the hospital, when the plaintiff was being treated for his injuries. The plaintiff stated in his deposition: "I just said I'm sorry for whatever I said to cause this to happen. I was trying – I mean, I wanted it – I was trying to call my wife and I was trying to be polite and let them get my wife to come down there."

Officer Rushing maintains that Blackard was "agitated" during the booking process and "giving him attitude with the questions [he] asked him." Rushing testified that he asked Blackard what he was doing when Blackard put his hands in his pocket, and in response,

3

Blackard stated, "I have a gun," or "I've got a gun. Something like that." Rushing testified that "we immediately went in and took him to the ground." Rushing stated that he tried to get Blackard's hands behind him to handcuff him:

> I told him several times to – or at least two times, I know, to give
> us his hands. He refused to do so. And that's when I – because of
> the threat of the handgun, or the gun, that's when I decided to tase
> him.

Rushing testified that he took Blackard to the ground as quickly as possible to prevent Blackard from being able to retrieve a weapon, if he had one.

In support of summary judgment, defendants submitted the affidavits of Officer William Gifford and Officer Gregory Stacks. These officers aver that Blackard was cursing the officers and threatening their jobs during the booking process. Blackard's threats, cursing, and agitation, however, are not obvious on the surveillance tape.

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed.R.Civ.P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

4

Law and Analysis

**A. Defendants' Motion to Strike**

The defendants have filed a motion to strike the plaintiff's response opposing summary judgment as untimely. Rule 7(b)(4) of the Uniform Local Rules states that "[c]ounsel for respondent must, within fourteen days after service of movant's motion and memorandum brief, file a response and memorandum brief in support of the response." Plaintiff's response was filed five days late. Plaintiff's counsel could have notified the court before his response was due that he needed additional time to respond and requested an extension, but he failed to do so. The court notes that this is not the first time that counsel for the plaintiff has filed a response late without requesting an extension.

On top of being filed late, the plaintiff's response is inadequate. The plaintiff's complaint alleges claims under the Fourth, Eighth and Fourteenth Amendments of the Constitution. It alleges five official capacity claims and one individual capacity claim, but plaintiff's response contains no legal analysis regarding the standards for prevailing on these claims. In fact, the response contains no analysis of the law at all. It cites two judicial opinions, albeit related to the summary judgment standard, and not the nuanced and complicated areas of law on which the plaintiff's complaint is based.

The local rule requiring a response within fourteen days is not optional, and because this occasion is not the first time that plaintiff's counsel has ignored the rule, his response shall be stricken.

Dispositive motions, however, cannot be granted because they are unopposed. *See* Uniform Local Rule 7(b)(3)(E). Summary judgment can only be granted "if the motion and supporting materials – including the facts considered undisputed – show that the movant is

entitled to it." Fed.R.Civ.P. 56(e)(3). "Summary judgment should be granted only when the truth is clear. *Sindermann v. Perry,* 430 F.2d 939, 943 (5th Cir. 1970). "The Supreme Court has recognized that, even in the absence of a factual dispute, a district court has the power to 'deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.'" *Black v. J.I. Case Co., Inc.,* 22 F.3d 568, 572 (5th Cir. 1994)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Liberty Lobby, Inc.,* 477 U.S. at 255.

### B. Claims Against the City, Mayor, Police Department, and Chief of Police

The plaintiff's claims against the City of Southaven, Mississippi; Mayor Greg Davis, in his official capacity as Mayor of Southaven, Mississippi; the Southaven Police Department; and Thomas Long in his official capacity as Chief of Police, shall be dismissed. Even if the court had not stricken the plaintiff's response, these claims would still fail because the plaintiff's response does not address these claims nor support them with deposition excerpts, documents, or other materials. The court does not, in the absence of any proof, assume that a non-moving party could or would prove the necessary facts at trial. *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

### C. Individual Claims Against Officer Rushing

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "[T]he qualified immunity defense . . . provides ample protection to

all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475

U.S. 335, 341 (1986).

"When a defendant invokes qualified immunity, the burden is on the plaintiff to

demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314,

323 (5th Cir. 2002). The plaintiff must "be able to point to controlling authority – or a robust

consensus of persuasive authority -- that defines the contours of the right in question with a high

degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371-72 (5th Cir. 2011). "Where no

controlling authority specifically prohibits a defendant's conduct, and when the federal circuit

courts are split on the issue, the law cannot be said to be clearly established." *Id.* at 372. A case

directly on point is not required; rather "existing precedent must have placed the statutory or

constitutional questions beyond debate." *Id.* "The *sine qua non* of the clearly-established inquiry

is 'fair warning.'" *Id.*

The plaintiff has not met his burden of demonstrating the inapplicability of qualified

immunity, and the plaintiff's claims against Officer Rushing in his individual capacity shall be

dismissed.

### D.       Official Capacity Claims Against Officer Rushing

To prevail on an excessive force claim, a plaintiff must show (1) more than a de minimus

injury, (2) which resulted directly and only from the use of force that was excessive to the need,

and (3) the force was objectively unreasonable. *Hudson v. McMillan,* 503 U.S. 1, 9 (1992);

*Heitschmidt v. City of Houston,* 161 F.3d 834, 839 (5th Cir. 1998). "The question is one of

'objective reasonableness,' not subjective intent, and an officer's conduct must be judged in light

of the circumstances confronting him, without the benefit of hindsight." *Manis v. Lawson,* 585

F.3d 839, 843 (5th Cir. 2009).

"[T]he test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham v. Connor,* 490 U.S. 386, 397 (1989). "[H]owever, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "[T]he question is 'whether the totality of the circumstances justifies[s] a particular sort of . . . seizure." *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8 (U.S. 1985).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

Officer Rushing challenges two elements of Blackard's excessive force claim. He argues that he was objectively reasonable in believing that Blackard posed a threat of serious harm, and he argues that Blackard cannot maintain his claim because his injuries were "de minimus." The court addresses these elements in turn:

1. <u>Was the Force Used Objectively Unreasonable?</u>

The court finds that genuine issues of material fact prevent the court from concluding at the summary judgment stage that Officer Rushing was objectively reasonable in believing that Blackard posed a threat of serious harm justifying the force used. Specifically, it is disputed whether Blackard's comment, "Yeah, man, I've got a gun in my pocket," could be considered a legitimate threat. This issue is genuine, particularly because: (1) Blackard alleges that he had

8

been searched "several times" prior to the statement, and (2) both Blackard and Rushing admit to

hostility and verbal sparring between them prior to the incident. While Officer Rushing's

subjective intent has no bearing on whether the force used against Blackard was reasonable, the

court finds that the hostility and verbal sparring is relevant to the issue of determining whether

Officer Rushing perceived Blackard's statement as a legitimate threat. Blackard maintains that

his comment was obviously sarcastic and in response to a sarcastic question, while Officer

Rushing maintains that the comment was threatening and in a loud voice. The surveillance tape

substantiates Blackard's position that he was searched thoroughly because the tape shows

Blackard twice prior to the incident walking freely through the booking area un-handcuffed.

Presumably, Blackard would not have been allowed to do so, had he not been thoroughly

searched.

　　　Even if the court could find that Blackard's statement was a legitimate threat justifying

the officers' actions in taking Blackard to the ground, the court cannot conclude at this juncture

that Officer Rushing was justified in tasing Blackard. The surveillance tape shows Officer

Rushing deciding to deploy his taser at a point where Blackard was already pinned to the ground

by three officers. Officer Rushing testified that Blackard was noncompliant during the

handcuffing process, and Blackard denies that he was. The tape does not resolve the issue

because Blackard is blocked from view during his alleged noncompliance. Whether tasing

Blackard was objectively reasonable is a question that must be left for the jury.

　　　　　2.　Are Blackard's Injuries De Minimus?

　　　The injury necessary to support an excessive force claim "must be more than a de

minimus injury and must be evaluated in the context in which the force was deployed." *Glenn v.

City of Tyler,* 242 F.3d 307, 314 (5th Cir. 2001). "A plaintiff is no longer required to prove

9

significant injury to assert a section 1983 Fourth Amendment excessive force claim." *Harper v.*

*Harris County,* 21 F.3d 597, 600 (5th Cir. 1994). "The amount of injury necessary to satisfy [the]

requirement of 'some injury' and establish a constitutional violation is directly related to the

amount of force that is constitutionally permissible under the circumstances." *Flores v. City of*

*Palacios,* 381 F.3d 391, 399 (5th Cir. 2004). "The definition of a cognizable injury, therefore,

changes with the facts of each case. *See e.g., Williams* [ *v. Bramer*]*,* 180 F.3d [699,] 704

(holding that choking the plaintiff was a cognizable injury when it served no legitimate purpose

but that it was not a cognizable injury when it was incident to a search of the plaintiff's mouth

for drugs). If the force used is constitutionally permissible, i.e., objectively reasonable, the

plaintiff has not, by definition, suffered a cognizable injury and [his] injury is by definition *de*

*minimus.*"

Blackard was tased. He sustained injuries that, according to Officer Rushing, resulted in

heavy bleeding and that required medical treatment. The court cannot find that these injuries are

de minimus. The jury must first determine whether the force used against Blackard was

objectively reasonable.

Conclusion

Viewed in the light most favorable to Blackard, the court finds genuine issues of material

fact exist in this matter and is not satisfied that no rational trier of fact could find for Blackard.

The defendants' motion to strike is **GRANTED,** and the defendants' motion for

summary judgment is **GRANTED IN PART AND DENIED IN PART:**

(1) The claims against the City of Southaven, Mayor Greg Davis, the Southaven Police

Department, and Thomas Long in his official capacity as Chief of Police shall be

dismissed;

10

(2) The individual capacity claims against Officer Brannon Rushing shall be dismissed;

and

(3) The official capacity claims against Officer Brannon Rushing shall proceed to trial.

A separate order in accordance with this opinion shall issue this day.

**SO ORDERED**, this, the 9th day of March, 2012.

/s/ Neal Biggers
**NEAL B. BIGGERS**
**U.S. DISTRICT JUDGE**